# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS W. LEEK, | Civil Action |
| Plaintiff, | No.   2:21-cv-1001 |
| v. | |
| SEWICKLEY ACADEMY, | |
| Defendant. | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Douglas W. Leek, by undersigned counsel and pursuant to Fed.R.Civ.P. 8 files the foregoing Civil Complaint seeking legal and equitable relief for the race discrimination Defendant inflicted upon him and for the contract Defendant breached.

### I. Jurisdiction

1. The Jurisdiction of this Court is invoked pursuant to Section 1 of the Civil Rights Act of 1866, 42 U.S.C. §1981, 28 U.S.C §§1331 and 1343(a)(3) and this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367.

### II.  The Parties

2. Plaintiff Douglas W. Leek, Ed.D, is an adult individual who resides at 222 5th Avenue, No. 322, Pittsburgh, Pennsylvania 15222.  He is an African-American.

3. Defendant Sewickley Academy ("SA") is a corporation, which operates an independent secondary school in Sewickley, Pennsylvania. Defendant's principal place of business is located at 315 Academy Avenue, Sewickley, Pennsylvania 15143. At all times relevant to this action, Defendant was Dr. Leek's employer.

### III. Factual Background

**Defendant's Board of Trustees Adopts Diversity, Equity Inclusion and Social Justice Initiatives to Accurately Teach and Address Issues of Racial Intolerance, and Injustice in Society.**

4. In April 2021, Defendant's Board of Trustees adopted diversity, equity, inclusion and social justice initiatives (DEISJ).

5. The articulated goals of the DEISJ Plan that Defendant's Board approved included:

- Clearly Defining Diversity, Equity, Inclusion and Social Justice

- Communication of the DEISJ Strategic Plan to the SA Community and the region

- Achieve representation among SA's students, faculty and staff that reflects the diversity of the region, particularly among those who have been historically unrepresented

- Strengthen a school culture that reflects, supports, and reinforces SA's DEISJ commitments and the specific goals of the Plan

- Improve lived experience of all historically under represented stakeholder in and visitors to the Sewickley Academy community

- Ensure that all students have equitable access to the resources (social-emotional, academic, and financial) that they need to thrive at Sewickley Academy

- Ensure that both curriculum and pedagogy are aligned to and supportive of our DEISJ goals and values

- Ensure that the Office of Diversity, Equity and Inclusion has the resources it needs to support the furtherance of the goals identified in this Plan

- Take specific steps to accomplish our DEISJ goals in response to the well-documented, systemic inequities faced by Black people in our region

2

6. The DEISJ Initiatives were adopted with Defendant's realization, as expressed by its then Head of School, that: "Racism is not a black people's problem to solve – it is a white people's problem to solve," but the path forward to justice and equality will require a partnership among all people, coming together in solidarity to do the work necessary to move us forward as a society. As a start, we need to band together to dismantle the structures that oppress and disempower."

7. To that end, Defendant's Head noted that if we do not want a society roiled by anger and violence, then we need to examine the root causes and move swiftly to address those causes, because the challenges we face as a society are real and profound, and they will not be overcome if we as a society persist in blaming the victims and in perpetuating – indeed exacerbating – the structures of oppression that keep so many of our fellow citizens from realizing their rightful place in society.

8. SA's then Head of School promised that SA would continue to do its part to raise awareness and educate its students so they can see injustice and therefore become part of the solution.

9. SA's Head of School likewise committed the institution to supporting the growth of its faculty and staff. As the Head of School announced, "Minds must change, and so must hearts, but this is only possible if we create the spaces where positive, constructive, affirming dialogue can take place." "Until we can realize the dream that Martin Luther King, Jr. had for his children, that they be judged by the content of their character and not by the color of their skin, we must resist racism. We must protest. We must say 'enough'. More than that, we must act and do the hard things that need to be done to create a more equitable and just society for all, not just for some. And the

only way we will make progress is by addressing the one thing that has always kept this country from achieving the true fulfillment of her extraordinary promise: racism and the legacy of slavery that haunts us even to this day."

**A Parents Group Seeking to Restore The School To "What It Used To Be" Complains The Above-Described DEISJ Initiative Is Really Teaching "Critical Race Theory."**

10. On or about June 1, 2021, a group of SA parents, billing themselves as the Sewickley "Parents' Organization," wrote to SA's families and leaders, indicating that the DEISJ initiative was actually Critical Race Theory dressed in sheep's clothing. The "Parents Organization" admitted that the DEISJ is not based on Critical Race Theory, nor does it specifically include any such courses based on Critical Race Theory, but noted that the concept does not have a static, narrow definition and is constantly evolving.

11. The Parents Organization's June 1, 2021 letter argued that the goals identified in the DEISJ Initiative were not consistent with a focus on academic excellence.

12. Rather, the "Parents' Organization" characterized the DEISJ as a product of the Southern Poverty Law Center, which it characterized as a "highly political" organization that opposes white supremacy in school and teacher education, curricula, school discipline policies, school facilities, and classroom climates.

13. Critical Race Theory is an academic tool that has been used in law schools since the 1970s to debate the idea that racial discrimination is embedded in United States' law, social constructs, and economic policies.

14. The "Parents Organization" maintains a website in which it says it wants to ensure SA continues providing "an educational environment free of political bias and social indoctrination."

15. The "Parents Organization" also has placed advertisements in local publications demanding the removal of activism from the classroom.

16. In response to the "Parents Organization" June 1 letter, SA's Board of Trustees reached out to determine what the Organization sought.

17. The DEISJ expressed goals set forth above were removed from SA's website.

18. On July 1, 2021, SA's Board of Trustees announced the departure of the Head of School, Kolia O'Connor in what it called "a change in leadership…in the best interest of the school."

19. Immediately after removing O'Connor, the SA Board of Trustees appointed Ashley Birtwell, a member of the SA Board of Trustees, as Interim Head of School.

20. Shortly thereafter, during conversations with a parent, Ms. Birtwell expressed a commitment "to restore the school to what it used to be…"

21. Ms. Birtwell, indeed, circulated an email from that parent reiterating that commitment to members of SA's administrative's team.

**SA Fires Every African American Member of its Administrative Team, As Well as An African American Faculty Member.**

22. A week later, on July 21, 2021, Defendant fired five members of its Administrative Team and one faculty member.

23. Every African American member of Defendant's Administrative Team was eliminated in the July 21, 2021 firings.

24. In the July 21, 2021 firings, Defendant eliminated its Director of Diversity, Equity, Inclusion and Social Justice, LaVern Burton, an African American.

25. In the July 21, 2021 firings, Defendant eliminated Douglas Leek, its Director of Admissions and Financial Aid, an African American.

26. On July 27, 2021, Defendant replaced Dr. Leek with the Associate Director of Admissions, Jayme Thompson, a white female

**Defendant Associated Dr. Leek with Critical Race Theory.**

27. Prior to firing Dr. Leek, Interim Head Birtwell engaged in a discussion with him about the difference between the school's DEI and Social Justice Initiative and Critical Race Theory.

28. Dr. Leek had discussed CRT in his doctoral dissertation, and was well aware that Defendant's DEISJ imitative did not include CRT, and he told Interim Head Birtwell this.

29. Indeed, Dr. Leek was known to Defendant's new Interim Head Birtwell as being highly involved in expanding racial and ethnic diversity in independent schools.

30. But Interim Head Birtwell likewise inaccurately viewed Dr. Leek as heavily associated with the CRT.

31. Dr. Leek never advocated for the introduction of CRT into the curriculum of Sewickley Academy –or indeed into any non-graduate school course of study.

**Defendant Fires Dr. Leek Because He Is An African American, But Fabricates A Pretextual Reason.**

32. Dr. Leek is an enrollment professional with nearly 20 years of experience.

33. Dr. Leek has successfully worked at multiple levels of education, including elementary, secondary, undergraduate and graduate levels.

34. During his first full year with Defendant, Dr. Leek had enrolled the most students at the school in the last three years.

35. By contrast, two of the previous admissions directors who did not enroll nearly as many new students were promoted.

36. In March 2021, just four short months before Defendant fired Dr. Leek, he was commended in a performance evaluation for accomplishing much under the challenging circumstances of a pandemic, and for so quickly demonstrating how much he added to the organization, not just in the work of admissions, but in the overall leadership of the school.

37. Nonetheless, on July 21, 2021, Interim Head Birtwell fired Dr. Leek for what she said was "performance."–which she said meant "current low enrollment."

38. Defendant has sustained low enrollment for 16 years.

39. Dr. Leek had outperformed the previous occupants of the Admissions Director office and did so during a pandemic.

40. Dr. Leek had yielded the most applications and completed applications in the past three years.

41. Dr. Leek had enrolled the most students at the school than any one during the last three years.

42. When Dr. Leek pointed this out to Birtwell, she had no response.

43. Birtwell told Dr. Leek she was "brought on to move the school in a new direction." and therefore he was fired.

44. Defendant's "performance" reason is pretextual, and Defendant knows it is.

## Count I
## 42 U.S.C. §1981
## Race Discrimination

45. Plaintiff incorporates by reference the allegations in Paragraph 1 to 44 as if fully restated.

46. Defendant discharged Dr. Leek because of his race, and therefore deprived Dr. Leek of the same right to make and enforce contracts as is enjoyed by white citizens in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981.

47. Defendant's discharge of Dr. Leek because of his race is part of a pattern and practice of discrimination on the basis of race with the goal of restoring the school "to what it used to be."

48. Defendant's actions in firing Dr. Leek because of his race was undertaken with reckless indifference to Plaintiff's federally protected right to make and enforce contracts irrespective of his race.

49. As a direct and proximate result of Defendant's discriminatory and retaliatory treatment, Dr. Leek suffered the following injuries.

    a. Great mental anguish and emotional strain;

    b. Humiliation and inconvenience; and

    c. Lost wages and benefits.

WHEREFORE, Plaintiff demands judgment against Defendant pursuant to 42 U.S.C. §1981 as follows:

    a. That Defendant be permanently enjoined from discriminating against Dr. Leek because of his race;

    b. That defendant be ordered to reinstate Dr. Leek to his position;

    c.    That Defendant be required to compensate Dr. Leek for the diminishment of the career advancement he would have obtained had it not been for Defendant's illegal treatment;

    d.    That Dr. Leek be awarded compensatory and punitive damages in an amount to be determined at trial;

    e.    That Dr. Leek be awarded lost back and front pay;

    f.    That Dr. Leek be awarded against Defendant the costs and expenses of this litigation, and reasonable attorney's fees; and

    g.    That Dr. Leek be awarded such further relief as this Court deems to be just and proper.

## Count II
## Breach of Contract

50. Plaintiff incorporates by reference the allegations in Paragraph 1 to 49 as if fully restated.

51. Dr. Leek was employed by Defendant Sewickley Academy pursuant to a written contract dated February 19, 2021.

52. Pursuant to that written contract, Dr. Leek's employment is subject to termination only for cause, as that term is defined in Defendant's Employee Handbook.

53. Defendant's Employee Handbook defines "cause" as follows:

- Any gross or repeated failure to carry out faithfully and professionally your duties or to comply with the school's policies and procedures

- Dishonesty (including without limitation, any misuse or misappropriation of the school's assets)

- Being convicted of any felony or any other crime involving moral turpitude

- Illegal use of drugs, chemicals, or controlled substances during the course of employment

&bull; Insubordination or failure to comply with a lawful written or oral supervisory directive, and

&bull; Any wanton and willful dereliction of duties

(Handbook III, Procedures for the Work Environment, §I "Definition of Cause" (October 4, 2019).

54. Defendant did not discharge Dr. Leek for "Cause" as that term is defined in the February 19, 2021 Employment Agreement.

55. Discharging Dr. Leek without Cause is a material breech of the aforesaid employment contract.

56. As a direct and foreseeable result of Defendant's breach of the employment contract, Dr. Leek sustained loss of salary and benefits, as well as consequential damages arising from Defendant's breech.

Wherefore, Dr. Leek demands judgment from Defendant Sewickley Academy and damages in an amount to be proven at trial.

Respectfully submitted,

Rothman Gordon, P.C.

/s/ Samuel J. Cordes
Samuel J. Cordes
Pa. I.D. No. 54874
310 Grant Street
Third Floor, Grant Building
Pittsburgh, PA 15219
(412) 338-1163
Attorney for Plaintiff